Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5425 | **DATE** | 8/15/2002 |
| **CASE TITLE** | Airborne Freight Corp. vs. International Brotherhood, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 11/22/02 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss the petition is denied. Plaintiff's request for preliminary injunction is also denied. Parties have 90 days to complete discovery on the issue of damages. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 16 2002 | |
| ✓ | Notified counsel by telephone. | | date docketed | 15 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | 02 AUG 15 PM 6:32 U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

AIRBORNE FREIGHT CORPORATION, )
)
Plaintiff, )
)
v. )
) No. 02 C 5425
INTERNATIONAL BROTHERHOOD OF )
TEAMSTERS LOCAL 705, )
)
Defendant. )

DOCKETED
AUG 1 6 2002

## MEMORANDUM OPINION AND ORDER

Airborne Freight Corporation ("Airborne") filed an emergency petition for a temporary restraining order seeking to enjoin the International Brotherhood of Teamsters, Local 705 ("the Union"), from violating the no-strike provisions of the collective bargaining agreement ("CBA"). Judge Gottschall granted the TRO, and I extended it until August 15, 2002. Airborne has filed an amended petition seeking an injunction and damages. The Union moves to dismiss the petition, and objects to the entry of a preliminary injunction. I deny the motion to dismiss, but I also deny the request for a preliminary injunction.

I.

Airborne is a overnight and express freight carrier, with a terminal in downtown Chicago, Illinois. Airborne is an "employer" and the Union is a "labor organization" for the purposes of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 152(7), 152(5). The Union and Airborne entered into a CBA, which provides

15

that unresolved grievances shall be sent to a Joint Grievance Committee for final and binding arbitration, and that "no strike or lockout shall occur pending a final decision by the Joint Grievance Committee," subject to certain exceptions. CBA, Art. 21 § 2.

On July 31, 2002, Union members at the downtown Chicago facility stopped work for approximately 3 hours and 40 minutes to protest (1) the continued employment of a supervisor who was accused of racist attitudes and actions and who had criminally battered an Airborne employee who was a Union steward, and (2) the alleged denial of water to Union members on a recent hot day and the removal of water coolers from the loading dock at the downtown Chicago facility. Airborne claims that the work stoppage delayed shipments, leading to customer complaints, and that it has suffered a loss of good will, injury to its reputation for on-time delivery, and other financial and economic injuries. Airborne claims that the work stoppage violated the "no-strike" provision of the CBA, Art. 21 § 2, and seeks to enjoin the Union from further violations of this provision, as well as monetary damages. The Union moves to dismiss the claim for an injunction, arguing that Airborne cannot demonstrate its entitlement to an injunction under *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970).

II.

The Norris-LaGuardia Act prohibits federal courts from enjoining workers from, among other things, refusing to work or

protesting peaceably. *See* 29 U.S.C. § 104. However, "a no-strike obligation, express or implied, is the quid pro quo for an undertaking by the employer to submit grievance disputes to the process of arbitration," and the incentive for employers to arbitrate disappears if no-strike provisions in collective bargaining agreements cannot be enforced by injunction. *See Boys Markets*, 398 U.S. at 248. Thus the Supreme Court has acknowledged a narrow exception to the Norris-LaGuardia Act, allowing federal courts to enjoin strikes over grievances that both the union and the employer are contractually obligated to arbitrate. *Id.* at 253-54. "Even in the absence of an express no-strike clause, an undertaking not to strike [is] implied where the strike was over an otherwise arbitrable dispute." *Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 407 (1976).

An employer seeking a *Boys Markets* injunction must demonstrate that (1) the CBA imposes on both parties a mandatory duty to submit to binding arbitration, (2) the dispute at issue is subject to the mandatory arbitration provisions, *Irvin H. Whitehouse & Sons Co. v. N.L.R.B.*, 659 F.2d 830, 833-34 (7th Cir. 1981), and (3) "that 'an injunction would be warranted under ordinary principles of equity.'" *Chicago Dist. Council of Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001). Here the Union argues that there was no contractual duty to arbitrate the dispute about the abusive supervisor, that the dispute about

"abnormally dangerous" working conditions may not be enjoined under 29 U.S.C. § 143, and that Airborne cannot establish that it will suffer irreparable injury if the Union is not enjoined.

A.

Airborne alleges that the work-stoppage was based on the battery of a Union steward by a supervisor and by the denial of water to workers on a hot day. The Union does not dispute this allegation.[1] The Union admits that the dispute about the denial of water was grievable, Reply at 5, but argues that the dispute about the abusive supervisor was not grievable.

"[W]hether a collective bargaining agreement creates a duty to arbitrate a particular grievance is an issue for judicial determination" as a matter of contract law. *International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 371 v. Logistics Support Group*, 999 F.2d 227, 229 (7th Cir. 1993). "[W]hen the contract contains an arbitration clause, there is a presumption of arbitrability . . . . Doubts should be resolved in favor of coverage." *Local Union 1393 Int'l. Bhd. of Elec. Workers, AFL-CIO v. Utilities Dist. of W. Ind. Rural Elec. Membership Co-op.*, 167 F.3d 1181, 1183-84 (7th Cir. 1999). Here the CBA provides grievance and binding arbitration procedures for

---

[1] In fact, although I cannot consider it for the purposes of the motion to dismiss, *see In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992), the Union supplements these allegations in the affidavit of Mark Postilion.

4

"[a]ll differences relating to the interpretation or application of any provision of this Agreement, other than discharge or discipline of an Employee . . . ." Art. 21 § 2, and the issues here relate to the application of specific provisions of the CBA.

To the extent that the criminal battery of an employee by a supervisor posed a safety risk, it was covered by Art. 16 § 4 of the CBA, which provides that:

> [u]nder no circumstances will an Employee be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property or in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment.

The Union argues in reply that the complaint about the abusive supervisor "is not just a matter of 'working conditions' or employee safety," but to the extent that the employees were protesting the supervisor's racist attitudes and actions and use of racist logos, see Postilion Aff. ¶ 4(a), it was covered by the non-discrimination provision of the CBA, Art. 25 § 8. Both the denial of water and the abusive supervisor were grievable issues that were subject to mandatory arbitration.

The "no-strike" provision states that "[n]o strike or lockout shall occur pending a decision or deadlock by the Joint Grievance Committee, or a decision by the arbitrator . . . ." Art. 21 § 2(b). The Union argues that the "no-strike" provision does not apply here because no grievance was filed as to the abusive supervisor, and, although a grievance had been filed as to the denial of water, it

5

had been resolved and was therefore not "pending" at the time of the work stoppage. On its face, the "no-strike" provision applies only to pending grievances. Nonetheless, even in the absence of an express no-strike provision, an agreement not to strike is inferred where the dispute is otherwise arbitrable. *Buffalo Forge*, 428 U.S. at 407.

B.

The Union argues that safety strikes cannot be subject to *Boys Markets* injunctions. The CBA provides for arbitration of safety disputes, and the presumption of arbitrability applies to safety disputes as it does to other labor disputes. *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 379-80 (1974). Nonetheless, the right of workers to refuse to work "in good faith because of abnormally dangerous conditions for work" is protected by § 502 of the LMRA, 29 U.S.C. § 143. "This section provides a limited exception to an express or implied no-strike obligation." *Gateway Coal Co.*, 414 U.S. at 385. "[A] work stoppage called solely to protect employees from immediate danger is authorized by § 502 and cannot be the basis for . . . a *Boys Markets* injunction." *Id.* But a subjective, honest belief that conditions are abnormally dangerous is not enough; "a union seeking to justify a contractually prohibited work stoppage under § 502 must present 'ascertainable, objective evidence supporting its conclusion that an abnormally dangerous condition for work exists.'" *Id.* at 386-87.

6

An "abnormally dangerous" working condition is one that presents "some identifiable, presently existing threat to the employees' safety." *Id.* at 386.

To the extent that the protest about the abusive supervisor can be characterized as a "safety strike," it does not meet the limited exception of *Gateway Coal*. In that case, workers walked off the job to protest the retention of supervisors who had falsified air quality reports. The court rejected the assertion that "[a]ny employee who believes a supervisor or fellow worker incompetent and who honestly fears that at some future time he may commit some unspecified mistake creating a safety hazard could demand his colleague's discharge and walk off the job despite the contractual agreement not to do so." 414 U.S. at 386. This type of subjective fear of future safety risks was insufficient to come within the savings provision of § 502. *Id.* Fear of future abuse from the supervisor in this case is likewise too speculative to constitute an "immediate danger" under § 502.

The Union argues that the denial of water was the type of objectively emergent condition that justified a work stoppage under § 502. For the purpose of the Union's motion to dismiss, I must take as true the allegations of the petition, and any additional facts provided by Airborne. *See Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The petition states that the Union stopped work "to protest . . . the alleged denial of water to

Airborne employees on a recent hot day." Am. Pet. ¶ 5. In response to the motion to dismiss, Airborne submits evidence that, at the time the work stoppage began on the morning of July 31, 2002, the outside air temperature was between 75 and 78 degrees Fahrenheit. Pl. Ex. B. On the basis of these allegations, there was no "identifiable, presently existing threat to the employees' safety," see *Gateway Coal Co.*, 414 U.S. at 386, so the work stoppage was not justifiable under § 502.

The Union presents evidence that, in a "recent heat wave, temperatures on the loading dock at the [downtown Chicago] facility rose to 123 degrees with high humidity," and that, although there were two water coolers on the dock, Airborne management refused to allow Union employees working on the dock to drink from them. The windows on the dock had been boarded up. An employee called the City of Chicago cooling hotline, and paramedics and inspectors came to the dock and concluded that "conditions were extremely perilous" and told one employee that he should go to the emergency room. According to the Union, that employee was threatened with termination if he left to go to the emergency room. Postilion Aff. ¶ 4(b). Airborne removed the water coolers from the dock on July 19, 2002, and the Union filed a grievance about their removal on July 22, 2002. Airborne management agreed to return the coolers. Postilion Aff. Ex. B. The Union states that, notwithstanding this agreement, the water coolers were not returned until after the work

8

stoppage. Postilion Aff. ¶ 4(b).

I cannot consider the Union's facts for the purposes of the motion to dismiss, but I may consider them on the merits of the claim for injunctive relief. Nonetheless, I find that the Union has failed to meet its burden of coming forward with evidence of a "novel and immediately threatening situation," *Irvin H. Whitehouse & Sons Co.*, 659 F.2d at 836,[2] that existed *on the morning of the work stoppage*. The affidavit submitted by the Union states that "[i]n the recent heat wave in Chicago," temperatures on the loading dock were as high as 123 degrees, but there is no ascertainable evidence that workers were immediately threatened by such conditions on the morning of July 31, 2002. The only evidence of the temperature on July 31 is a Midwestern Regional Climate Center report, submitted by Airborne, stating that air temperatures in Chicago on that morning between 5:50 a.m. and 7:53 a.m. (the work stoppage started at approximately 7:05 a.m.) were between 75 and 78 degrees. There is no "ascertainable, objective evidence" of the temperatures on the dock, and it is the Union's burden to supply that evidence, even in response to a request for a preliminary injunction. *See Gateway Coal Co.*, 414 U.S. at 386-87. Even if the working conditions may have been unreasonably dangerous on a

---

[2] The Union argues that *Irvin H. Whitehouse & Sons Co.* does not apply because it did not specifically address § 502, but that case specifically adopted the holding of *Gateway Coal*, which was a § 502 case. *See* 659 F.2d at 836.

9

previous date, and the workers' health and safety were threatened by the removal of the water coolers, I cannot conclude on the evidence before me that the work stoppage on July 31 was justified by § 502.

C.

Finally, I consider whether Airborne has demonstrated its entitlement to a preliminary injunction under ordinary principles of equity. Because I consider evidence outside of the complaint with regard to this inquiry, I dispense with the motion to dismiss and proceed to the merits. To demonstrate an entitlement to a preliminary injunction, "[a]s a threshold matter, plaintiffs must show 1) a likelihood of success on the merits, 2) irreparable harm if the preliminary injunction is denied, and 3) the inadequacy of any remedy at law." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Once the plaintiff makes this showing, I balance "4) the harm to plaintiffs if the preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted, and 5) the impact on persons not directly concerned in the dispute (the 'public interest')." *Id.*

The threshold for likelihood of success on the merits is "low." *Id.* Airborne "need only demonstrate a 'better than negligible chance of succeeding.'" *Id.* I have already determined that Airborne has demonstrated that the Union's strikes were subject to the mandatory grievance and arbitration provision, so on

10

that basis, Airborne has demonstrated at least a negligible chance of succeeding. The Union raises one argument, in a footnote in its reply brief, that might affect Airborne's likelihood of success. It argues that the no-strike provision was inapplicable because Airborne had failed to comply with the resolution of the grievance. The removal of the water coolers had been grieved, and the grievance was resolved on July 22, 2002, by Airborne's agreement to supply water coolers. According the Union, the coolers were not returned to the dock until after the work stoppage. The CBA permits the Union to strike in the event of Airborne's "failure to comply with any final decision of the Grievance Committee, arbitrator, Joint Grievance Committee, or decision of the tiebreaking neutral member of the Grievance Committee over a grievance relating to the interpretation or application of the Agreement, or arising from conditions of employment other than discipline or discharge . . . ." CBA Art. 21 § 3. This is arguably a sufficiently explicit expression of the intent to allow strikes to negate the presumption that an agreement to arbitrate is coterminous with the duty not to strike. *See Gateway Coal Co.*, 414 U.S. at 382; *see also Complete Auto Transit, Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 414*, 839 F. Supp. 1339, 1344 (N.D. Ind. 1993) (Lee, J.) (holding that no injunction was appropriate to prevent strike to enforce arbitration award where contract permitted strikes for that purpose). The Union waived this argument by raising it first in

11

reply, *see Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998), and in a footnote, *see United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991), and Airborne has not had an opportunity to respond. I need not determine here whether Airborne could ultimately prove that the strike for failure to comply with resolution of the water cooler grievance was illegal, however, because I find that Airborne has not demonstrated irreparable harm if the preliminary injunction is denied.

"Irreparable injury means not simply any injury resulting from a breach of contract that would not be fully redressed by an arbitral award, but rather an 'injury so irreparable that a decision of the (arbitration) Board in [the employer's] favor would be but an empty victory.'" *Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 285-86 (7th Cir. 1981). Airborne argues that it suffered a loss of reputation and good will from the work stoppage because of delivery delays and that it had to reimburse customers for late deliveries. Airborne relies on *Consolidated Freightways Corp. of Delaware, Inc. v. Highway Truckdrivers & Helpers Local Union No. 107*, Civ. A. No. 87-1493, 1987 WL 12756 (E.D. Pa. June 24, 1987), in which the court determined that, in a competitive shipping industry where timely delivery is essential, the potential loss of customers because of late deliveries due to a work slow-down presented a sufficient threat of irreparable harm to warrant an injunction. *Id.* at *10.

12

The court held that it did not matter that the employer could not point to any particular customers lost as a result of the slow-down, because even if customers put up with a delay in a single incident, there was no guarantee they would tolerate "continued disruptions." *Id.* In that case, however, the dispute with the Union was ongoing; after a new policy was announced, the employees engaged in a work slow-down and voiced discontent that lasted up until the entry of the TRO. *Id.* Because the policy was still in effect and there was no indication that employee dissatisfaction with it had subsided, the court concluded that the Union was likely to continue with the slow-down unless a preliminary injunction was ordered. *Id.*

Here, however, the underlying disputes that led to the work stoppage have been resolved and there is no indication that they are likely to continue. The work stoppage lasted less than four hours on one day, and the employees returned to work before Airborne sought the TRO. Unlike *Consolidated Freightways*, the particular conflict that caused the work stoppage was resolved before the TRO was entered. The abusive supervisor, though still employed by Airborne, has been disciplined and transferred, and, although summer and hot weather continue, the water coolers have been returned to the loading dock. The threat of strikes related to these concerns is therefore minimal.

Airborne points to a "history of repeated and deliberate

13

illegal work stoppages by the Union at Airborne's various facilities in the Chicago area." The "history" of incidents to which it refers consists of a couple of contentious encounters with a Union representative involving disrespectful and profane language. The Union also complained that the representative's visits to the work site were disruptive; none of the incidents complained of in the past were like the work stoppage at issue here. Because the underlying disputes have been resolved, I find that Airborne has not demonstrated a threat of irreparable injury, and although I deny the Union's motion to dismiss, I deny Airborne's request for a preliminary injunction.

However, Airborne may be entitled to damages for a breach of the CBA. *See Contempo Design, Inc. v. Chicago and N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 548-49 (7th Cir. 2000). Therefore I allow ninety days for discovery on the issue of damages.

                                                **ENTER ORDER:**

                                                **Elaine E. Bucklo**
                                                United States District Judge

Dated: August 15, 2002